The next case on the calendar is Gutterman v. Costco Wholesale Corporation. This is the first case on the calendar. Good morning, Your Honors. May it please the Court. I'll give you a couple minutes for the courtroom to clear. In the meantime, Your Honor, I did have a small visual aid. Would it be possible for me to hand it up to the Court? Have you given a copy to your adversary? Of course. Sure. You can give it to the Court. It's a very simple visual aid. Thank you. I thought all these spectators were here because they were interested in New York State's sales team. We tried to figure out what percentage of them were interested in this case. I guess we're finding out . . . Okay. Good morning, Your Honors. May it please the Court. This is William Weinstein for Plaintiff Appellant Mark Gutterman. The visual aid that I handed up and that I will hold from here is Section 1139 of the New York Tax Law. And the areas that are blacked out are the areas that Costco wants to read out of the statute. That's Section 1139A2. The purpose of that section that Costco wants to read out of the statute was clarified in the new singular case in the Third Department. The purpose of that statute, or section of the statute, and the underlying policy considerations of 1139A2 are to avoid unjust enrichment and ensure that the vendor's customers are, in fact, made whole. It is also to prevent a windfall. Section 1139A1, which is the section that Costco says controls here, and Section 1139A2 have a relationship. Costco says that 1139A1 is exclusive. But Costco also admits twice in its brief that it does have the option to file a refund claim on behalf of the customers. So if they're admitting twice, and that's on page 11 and 25 of their brief, that they do have the option to file a refund claim for the customer's whole, then it really isn't an exclusive provision under 1139A1. I think I get that. That is an option. It rather seemed to me that's an option that would apply in the case of a company that accidentally charges sales tax on something that shouldn't have been charged. The customers complain, or somebody notices, or out of the goodness of their own heart, they say, oh, my goodness, we've been doing the wrong thing. And they then go to the state and say, we actually overpaid you. We sent you, the state, sales tax, which we collected from customers, and we shouldn't have. You're not entitled to that money. And we are refunding it all to our customers, and we've refunded it, and we want you to give it back, because you're not entitled to it. They are. We collected it wrongly from them. We're giving it back to them. We're a wash, right? Of course, Esler would preclude that. But nothing says they, first of all, nothing says they have to do it. That's correct. And that's why we're trying to assert a private right of action under the statute. In this particular instance, because what we do allege is unjust enrichment, we allege that they're not being made whole, and we actually allege conduct that's consistent with what New York State considers to be tax fraud or tax evasion. We think in this instance, it's an even stronger case than the case where there's an option that they should be forced to do that. And the legislative history that we found supports that. The legislative history says that 1139A2, and that's addendum 15 of our opening brief, says that 1139A2 has been amended to make it the primary vehicle for obtaining refunds on behalf of customers, that the claim is supposed to be not by the customer, but by the vendor who collects the tax. The tax collector. It's clearly for the—it was amended clearly for the benefit of the customers, not for the tax collector. Maybe for the benefit of the courts. I assume that's right, that this is to the benefit of consumers, but it certainly does not say anything like consumers can bring an action to force the vendor to use this mechanism. And if that was their goal, you would think they would have said it. Well, 1133 is a statute that I referred to. 1133 gives the—gives Costco, the vendor, the right to sue the customers for unpaid taxes. There's nothing that's inconsistent between that and implying a private right of action in this instance, where what Costco has done has taken money from the customers to pay its own tax liability. They mirror each other. Costco, as the tax collector, is obligated to pay all the tax that it owes, not just the tax it collects, but the tax that it owes. It didn't do it here. So they've short-circuited. Well, except that it, you know, it did pay New York State. Correct. All and everything that New York State was entitled to. And that's a problem, because New York State has no incentive to really actively participate in this. As we pointed out, what would happen is, is that we would—assuming we have any records and the New York State regulations don't require us to file returns or keep any of those records, as opposed to Costco, who has all the records for everybody, we would go individually. New York State would have to give us back money that wasn't really paid on our behalf. And then they would have to go after Costco. Costco. It would be—it would—so it would be—I think it would be absurd to in this situation, in the—as opposed to allowing us to go forward. And by the way, we could join the tax department in this. They're allowed to join the tax department under 1133. We should be able to do the same thing. There are cases that support that. So that our claim is really against Costco in this case. It's not against the state. And as you pointed out, the state doesn't have our money. And one of the claims that—one of the claims that you have put in your That's correct, which is precisely what this statute is intended to prevent. But we don't—so I guess we can maybe set to one side the technical question of implied cause of action under this statute, where it seems to me you've got some extra burdens. What you're really saying is this is unjust. And unjust enrichment applies to that. And then the only question you have to answer, which is still maybe a very exclusive remedy, provision, foreclose, a common law cause of action for unjust enrichment. I should first point out that GBL 349 actually says that it applies even in the context of other statutes. So there's nothing that specifically excludes 349. You're saying both the unjust enrichment and the consumer protection? The consumer protection statutes. But maybe tell us why 1140 doesn't change the calculus. Yes, because 1140—well, 1140 doesn't change the calculus first with respect to 1139A2, because it doesn't exclude 1139A2 from the exclusive remedies. In terms of the other one, 1140 involves cases against the state. The money had and received involves a claim against the state for these refunds under—assuming that a return has been filed, the tax has been filed, and that the refund application has been filed. So—and we think the case is like Childers, where what you've got is you've got a situation that doesn't involve a standard filing of tax returns and a standard request for refunds. And the court there, the district court, allowed an unjust enrichment claim to come through, because in that situation, it was really the tax collector who injured the customers on its own behalf. It benefited from injuring the customers. It's the same thing here. Is there no valid purpose of this statute in the—of the exclusive remedies provision in the idea that we want to channel these kinds of disputes which go to the somewhat intricate mechanisms of how the New York sales tax applies to the tax commission, and therefore, we don't—you know, I would think one purpose of the exclusivity is to not have courts freelancing in decisions like, well, how is this tax incident supposed to fall and things like that, when you've got an expert commission that can do it? Two responses, Your Honor. First of all, there is nothing in any of the case law that addresses this, and we've asked alternatively that it be certified to the New York Court of Appeals, because we think that they could have the last say in this particular situation. But the other thing is that what's happened here is that Costco is circumvented. What should have happened is Costco should have paid the money that it owed under the statute, gone to the state, said, okay, we want a refund for this money, because we don't know, and it's—the coupon regulations don't apply to our practices. We say they do. We say that we are not liable. Frankly, they probably should have remitted both their liability and the money they collected from us. Then the state would have more than they're entitled to. Why should they do any of that? I mean, if they take the position that they're in compliance with the state sales tax regulation because of the way their coupons work or don't work, they take that position. Therefore, they collect the tax from you. They pass it on to the state. They think that's the right thing. Maybe they're wrong in that. I understand that. But again, you're saying, well, the right thing for them to do is to overpay the state or pay both things and then make a declaratory—ask the tax commission to decide. Why should they do all that if they think they're right? Because that's what the statute requires. It doesn't allow Costco to engage in self-help to determine that a coupon regulation that requires it to either disclose or bear liability is not applicable to it. And I should point out, I did—Costco knows how to request this kind of advice. They requested advice on whether 12 frozen chicken sandwiches are subject to sales tax. They requested advice on whether stamps are subject to sales tax. They requested advice on whether or not their membership fees are subject to sales tax. Why is this different than what any business person does all the time? Sometimes your lawyers tell you it is a little uncertain. Maybe you better ask if there's a mechanism to get the guidance of the administrative agency. And sometimes you or your lawyers think we're right, so we don't have to do that. And they go ahead and do it. Now, maybe they turn out to be wrong. And the question that's before us is, what are the remedial structures that would allow which aggrieved parties or the attorney general or the state tax commission or somebody to come in and correct them if they're wrong? And we think that this is really the only remedial mechanism that there is, particularly if their position is, look, we made this determination and we don't want to go. We don't want to find out what the proper determination is. Then they have short-circuited the process under 1133 and under 1140. 1140 imposes a duty on them also to consider at least filing a refund claim. And they just haven't done that. And by the way, bringing in the tax commission in the The language of 1140 explicitly says the remedies provided by 1138 and 1139 shall be the exclusive remedies available to any person for the review of tax liability imposed by this article. And no determination or proposed determination of tax or determination on any application for refund shall be reviewed by any action or proceeding other than a proceeding under Article 78. Where is the loophole there? Well, it depends on whether or not you take the position that 1139A2 is strictly up to the whims of COSCA. That's why you need the implied cause of action. Correct. Because the other things don't really work for you, given the language of 1140. Well, I'm not going to concede, particularly because Esler left that open. Esler said, and I know Esler's not precedential, but Esler said, look, if you've got a situation where the tax collector is knowingly collecting more than the applicable tax rate, or you've got a situation where it turns out that he hasn't remitted the money to the state, and that's what we've got here, because we're saying it's in their pockets, that in that situation maybe a claim under 349 would apply, maybe a claim for unjust enrichment would apply, because it's a different kind of situation. There is deceptive conduct that is over and above the ministerial collection of a tax where there's no dispute. And because you're asking me about what the lawyers did, I just wanted to point out what's happened here since we commenced our action. We commenced our action, and we pointed out that their catalogs contain certain references to coupons, so they eliminated it. We pointed out that their standard receipts contain specific references twice to coupons, so they eliminated it. We pointed out that their 10Ks for 10 years made references to monthly coupon mailers, so in response to all of this, they've eliminated it, and they've tried to take the position that they aren't coupons at all post hoc. They are just basically gaslighting the world in connection. The world knows that what they do is use coupons for discounts. If you look on the web, if you look anywhere, everybody calls Costco's practices coupon practices. But they're trying to come up with a post hoc rationalization why they wouldn't be liable under that statute. I think that's deceptive too, but clearly there's an unjust enrichment as well here. And did you want to take your rebuttal time now, or would you like to reserve it? I'd like to reserve it if I could, Your Honor. Thank you very much. May it please the court, James Arden for Costco Wholesale. New York law could not be more explicit about how and where Mr. Gutterman could bring his claim alleging that Costco illegally collected sales tax revenue. And that is by application to the tax commission under tax law section 1139, sub part one. It says it right there. In the case of tax paid by the applicant to a person required to collect tax, you're a tax collector. There it is. He can make that application. And as Judge Lynch, as you've said, section 1140 says the administrative remedies are the exclusive remedies available to any person for the review of tax liability imposed by this article. And section 1140 permits article 78 review, but it bars any other. As Your Honor was quoting directly from the statute. And Esler may be non-presidential, but it was really based on the explicit language of 1139 and 1140 when it said, under New York law, consumers seeking a return of sales taxes, quote, erroneously, illegally, or unconstitutionally collected or paid to a person required to pay or must apply for- Excuse me, Mr. Arden. The facts of Elster are different, aren't they, in at least this respect. In Elster, it seems to me to be the classic case that all of these mechanisms were aimed at, which is Dunkin' Donuts was charging sales tax on packaged coffee, right, the ground beans. Which is really a grocery item, and it shouldn't have been charged. And they maybe thought that that was like the coffee cup that they hand somebody, which is prepared food, and that's different. They got it wrong. They collected tax that wasn't really due. They gave it to New York State. And now the question is, what's the mechanism by which the consumers, ideally through Dunkin' Donuts, are going to get a refund of money that went to New York State that wasn't supposed to go? Here, the argument that Mr. Weinstein is making is a little different. He's saying that the tax should have never been collected because it should have, the incidence should have fallen on Costco. So New York State now is in a position where they didn't get anything they aren't entitled to. He's saying this was a fraud by which, and this is just an allegation, by which Costco collected tax that it should have paid to New York State from the consumer. New York State is not ahead of the game. New York State doesn't owe anybody anything. Is that the kind of situation that 1138 and 1139 are aimed at? Yes, absolutely. It is aimed at allegations of erroneous, illegal, or unconstitutional collection. Including illegal. So for- Yes, absolutely. So for example, your argument, it would be something like if a merchant deliberately just collects sales tax on every grocery item in the bodega. And passes on to New York State only the money that New York State is entitled to on the taxable items, and pockets all the rest. Still, the remedy for the consumer is to go to the state tax commission and say, they collected money that they never gave to you, but they collected it from me. And New York State has to give it something back? If the collection of tax is different than the sales tax, then that might be a different question. But there's no question here that the collection of the tax, we can say whether it was characterized because it was an undisclosed coupon or an instant rebate. By the way, your honor, and if I could just, the whole gas lighting issue. At the stores, it says instant rebate. There's no question that an instant rebate, under New York law, is something, is, requires the sales tax to include the amount of that instant rebate. So this cockamamie idea that that is in fact a coupon, is really, should not, should not get you around 1139 and 1140. And some, suddenly we're, we're here in front of a federal, a federal court. Well, I mean, the language is pretty explicit, but the rationale would seem also pretty obvious, right? The goal is that if, if folks like Costco are doing this, then the folks who paid the tax can go through the proceedings laid out in 1139, 1140, and then the tax commission is aware of a massive tax fraud, right? Exactly, your honor. And, and the cases that have come under this, it's not simply the exempt situation. But it has been cases where someone alleges that a store has, has issued a store coupon. And so it should be the discounted amount. But they've treated it like a, a manufacturer's coupon and get, and then treated assess the tax on the pre-discount amount. All of those, all of those, whatever the call, whatever the allegation is, it goes, it is supposed to be funneled to the tax commission. And the review is limited. The judicial review is absolutely limited to Article 78. As your honor was quoting from that language. They didn't simply say you can have Article 78 review. They were saying, you can't bring a declaratory judgment action. You can't bring an injunction action. You can't bring a judicial action. And most importantly, you can't bring a class action. And you can't bring a class action. What this is really about is if we were all public spirited and we wanted to go to the New York State Tax Commission and say, this weird stuff is going on at Costco, pay attention. You guys figure out if we're right that this is really a big tax fraud and then go do your thing, we wouldn't have this lawsuit. But what we are doing, what the plaintiff is doing is saying we want to be private attorneys general, bring this lawsuit on our own, on behalf of the whole class, not just one or two people who want to bring this to the attention of the state. And that's really the kind of thing that's happening. Absolutely, Your Honor. And if I- For good or ill. One last point I'd like to make, and that is on the allegation of unjust enrichment. This isn't a new sort of claim to try to avoid the obvious exclusivity of 1140. In fact, in the case that, the Esler versus Dunkin Donuts case, what is cited at length there is the Davidson case. And Davidson, in that case, actually, the third department said, the complaint claims that the collection of sales taxes was improper, unnecessary, unauthorized by law, and an unjust enrichment are claims that must be raised in an administrative proceeding. And if Your Honor has no further questions, we will rest in our brief. Thank you. Mr. Weinstein, why don't you pick up right there with Davidson, if you don't mind. Yes, I'd love to. In Davidson, what was going on was that the taxpayer was challenging the collection by the tax collector of a tax that Davidson alleged was illegal at the state level. That it was saying that this is an illegal tax, it shouldn't be collected at all. Here, we're trying to enforce the statute. It's a completely different situation. We're trying to enforce the statute and the regulations in a situation where there really isn't a ministerial function that's being performed by Costco. Davidson also relied on the ministerial function that all the tax collector was doing was collecting a tax that purportedly was legal. That is not what we are alleging here. And I think that Davidson- It's about unjust enrichment, right? In Davidson, no. Actually, in Davidson, the state was fully paid for their money. The tax collector didn't have anything in its pocket. But Davidson was suing RTC to get back the money that had been paid to the state on the grounds that it had been transferred illegally. There was nothing in its pocket, as opposed to here, where it is in its pocket. So the language there is dicta, is what you're saying then? No, no, no, no, no. I'm just saying that it's distinguishable. I'm sorry, what language you're on? I didn't mean to misstate the case, but I'm not sure which language you're referring to. Unjust enrichment, I mean, that's a claim involving, basically unjust enrichment is something that still has to be brought up through the administrative proceeding. I'm sorry, if there is, to the extent, I'm sorry, not if, but to the extent there is that language, it is a different situation because there is no unjust enrichment in that situation where the tax collector merely behaves ministerially and passes the money along. If I could, to several other things, not by a class action, you said, Judge Lynch. I do want to point out that in the new singular case, it was a class action. It was a class action, it worked. Everybody got their money back, and the third department didn't say, this is improper. I'm sorry, the class action is an unacceptable vehicle under 1139A2. To the contrary, it was a completely acceptable vehicle. One more point about that, please don't assume that if you report something to the state that they're going to do something. And certainly not in an instance where they've got all their money. They have no incentive to go after it. Finally, my final point, under 1133 no consumer taxpayer is required to file a return. No consumer taxpayer is required to keep the records that my colleague says would be the basis for a refund claim under 1139. There is nothing that requires a consumer to keep the documentation that would be required for the refund claim. So you're basically placing a burden on the consumer to file a refund claim, where the state's laws don't require it to keep the information to support the refund claim. As opposed to Costco, who under section 534.2 is required to keep all of this information, names, dates, amounts that are kept, that's regulation 534.2c. So that they can proceed with the refund claim that we are trying to pursue on a private right basis. And last, and I appreciate the court. To the extent that this is a completely different- I thought the last one was the last one. All right. The pen pen ultimate. This is the ultimate, I'm sorry. To the extent that this really does present an entirely different situation in terms of equities and everything else. And to the extent that the private right of action would be consistent under the statute with the entire statutory scheme. Including under 1140, which allows it to go forward if the court is not going to. As an alternative, we would ask the court to certify this. This is an important issue to be certified to the New York Court of Appeals alternatively. Thank you very much. Thank you both, and we will take the matter under close advisement.